Commonwealth *v.* Kozak, Appellant.

Argued March 26, 1957. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*Richard S. Campagna,* for appellant.

*Carlon M. O'Malley,* District Attorney, for appellee.

*Paul Ribner,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for Pennsylvania Public Utility Commission.

OPINION BY WATKINS, J., June 11, 1957:

Joseph Kozak was engaged in hauling culm from the Kehoe-Berge area in Luzerne County, to the Adams Coal Company washery located in Lackawanna County. Both the culm and the washery were owned by the Adams Coal Company. The hauling was done by a dump truck owned and operated by the defendant, without a permit, certificate of public convenience or license issued by the Public Utility Commission of the Commonwealth of Pennsylvania, authorizing the service performed. The defendant was operating under a contract with the Adams Coal Company, and hauling the culm for $3.27 a load, more or less, the price fixed at the discretion of the owner coal company.

The defendant was charged on May 1, 1956 with violating Section 1311 of the Public Utility Law, as amended, May 29, 1951, P. L. 494, section 1, 66 PS §1501, in operating as a motor carrier for compensation, without a certificate of public convenience, permit or license authorizing the service performed, and was summarily convicted in an alderman's court in the City of Scranton. The defendant took an appeal under special allowance to the Court of Quarter Sessions of Lackawanna County, and after hearing on the appeal, on August 1, 1956 the appeal was dismissed. From this action of the court below this appeal was taken.

The question of whether the defendant is a contract carrier or common carrier is not before this Court. The

only question raised on appeal is whether culm or coal silt comes under the exception contained in Section 2 of the Public Utility Law defining common or contract carriers. 66 PS §1102, Pars. 6 (d) & 7 (e). In par. 6, the following appears: "but shall not include . . . (d) any person or corporation who or which uses, or furnishes for use, dump trucks for the transportation of ashes, rubbish, excavated and road construction materials." In par. 7, the following appears: "but shall not include . . . (e) any person or corporation who or which uses, or furnishes for use, dump trucks for the transportation of ashes, rubbish, excavated or road construction materials."

Throughout the record the words "silt" and "culm" are used to describe the material being hauled. The technical definition of silt would be mud or fine earth deposited from running or standing water and is more correctly used in the coal business to describe the deposit left in streams or settling dams. "Coal silt" is often used to describe culm. "Fines" or "fine coal" is also used to describe this type of coal.

The term "culm" means the coal that passes through the screens or breakers, and is then placed on what is known as the "culm" or "refuse" heap. At the time it was so deposited, it was unmarketable coal, but with changing conditions in the anthracite coal business, this so-called waste material, when processed, has become valuable fuel, much in demand in the coal market. The word "culm" was doubtless brought to the Pennsylvania coal fields by Welsh miners. With them the word has been used to describe an inferior grade of coal of but little value, and it readily came into use to define coal not inferior in quality, but unmarketable and valueless because of its size. It was the adaption of a word to a use closely akin to its original meaning. Words and Phrases, Vol. 10, p. 634.

In *Lance v. Lehigh and W. B. Coal Co.*, 163 Pa. 84, 29 A. 755 (1894), the Court said: "At the time the lease was made there was no general market for coal which would not pass over a five eighths mesh. Such coal went to the culm or refuse pile, but a belief existed that in the future means might be devised to utilize this coal." That time has come and so-called "culm", "silt" and "refuse" banks have become valuable coal properties.

We agree with the court below that "Material is hardly a word the legislature would use if it wished to exempt valuable mineral matter from the operation of the act. Coal is more properly described as a mineral rather than a material. The construction contended for by the defendant would exclude from the act practically everything of value which is found in the earth. What the defendant was transporting in violation of the legislature was a commodity." The substance in question was a mixture of whatever waste was originally dumped in the refuse area and included fine coal that required processing at a washery before it became marketable as such.

From the record in this case, the fine coal material, silt or culm, had been deposited in this area from a breaker and then covered over with waste material such as dirt, rock and slate. On this waste material, with the passage of time, weeds, grass, trees, shrubs and other vegetation took root. The dragline shovel was then used to cast away the waste material so that the culm could be loaded and delivered to the washery for preparation.

In *Baltimore & Ohio Railroad Company v. Perry*, 23 P. U. C. 51, the Public Utility Commission held that coal is a mineral removed from the earth by mining processes rather than by process of excavation, the only object of which is to create a hole or cavity in the ground.

The act itself does not define the word excavated. The word itself is one in common usage, having a clear and unambiguous meaning, being defined in Webster's Dictionary: "To cut, scoop, dig, or wear out the inner part of anything and make it hollow; to hollow; to form by scooping or hollowing out." It seems clear that the meaning intended by the legislature, if the Public Utility Law is to have any effect, is that excavated materials are those which are dug out solely to make a clearing or to create a hole or excavation, and not to include commercially valuable materials to be removed and used for purposes other than road construction.

In the instant case, however, the material transported cannot, in any event, be classed as excavated material. Culm is the fine material deposited by a breaker after processing raw coal, the handling of which would be a re-loading of the culm from a place of storage rather than an excavation.

The decision of the lower court is affirmed and the appeal dismissed.